**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE CARRINGTON TEA COMPANY D/B/A CARRINGTON FARMS, *Plaintiff*, v. PRETIUM PACKAGING L.L.C., *Defendant*. | Civil Action No. 22-03825 **OPINION** |

**John Michael Vazquez, U.S.D.J.**

This action arises out of the purchase of allegedly defective food packaging. Plaintiff The Carrington Tea Company LLC ("Carrington") has sued Pretium Packaging L.L.C. ("Pretium"), alleging that containers Carrington purchased for the packaging of whey protein were contaminated with an allergen which destroyed the product. Currently pending before the Court is Defendant's motion to dismiss the Complaint. D.E. 2. The Court reviewed the parties' submissions[1] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the following reasons, Pretium's motion to dismiss is **GRANTED in part** and **DENIED in part**.

---

[1] The submissions consist of Pretium's motion to dismiss, D.E. 2 ("Br."), Plaintiff's opposition, D.E. 5 ("Opp."), and Pretium's reply, D.E. 6 ("Reply").

I.  **FACTUAL BACKGROUND**[2]

Carrington sells different flavors of "organic and conventional Simple Tera's Whey Protein." Compl. ¶ 1. Pretium sold packaging for the whey protein to Carrington. *Id.* ¶ 5. The sales were governed by Purchase Orders, and the Purchase Orders incorporated Carrington's "Purchase Order Terms and Conditions." *Id.* ¶¶ 5, 28; D.E. 5-3.[3] Plaintiff alleges that the containers Pretium provided "were contaminated by limonene." *Id.* ¶ 6. Plaintiff explains that "[l]imonene is an allergen (which was not disclosed on the packaging), and it created an odor and otherwise impacted the flavoring such that it rendered the Product unmarketable." *Id.* ¶ 7.

Plaintiff alleges that when it placed its product into the marketplace with Pretium's packaging, it "[a]lmost immediately . . . began receiving customer complaints," which claimed that the product "tasted bad, was inedible, and smelled like detergent or fragrances." *Id.* ¶¶ 8, 10. For example, customers allegedly complained that the product "smells and tastes like perfumed detergent," "smelled and tasted like plastic," "strongly smells like chemicals and tastes like chemicals," has a "strong chemical taste," and "gives off the worst smell that penetrates into [the] whey powder." *Id.* ¶ 11. Customers also stated that they "can't eat it anymore," described it as "toxic," and stated that Carrington "destroyed [Simply Tera's Whey Protein] with this new packaging!!!" *Id.* Plaintiff asserts that the limonene contamination did not exist in "pre-shipment samples approved by Carrington." *Id.* ¶ 9.

---

[2] The facts are taken from Plaintiff's Complaint. D.E. 1, Ex. B ("Compl.").

[3] While the Purchase Orders and Purchase Order Terms and Conditions were not attached to the Complaint, Plaintiff did attach them to the Declaration of Jeffrey I. Wasserman filed in opposition to Defendant's motion. D.E. 5-1. The Court considers the Purchase Orders and Purchase Order Terms and Conditions in deciding the motion because they are integral to and explicitly relied upon in the Complaint. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (explaining that when deciding a motion to dismiss under Rule 12(b)(6), a court may rely on "a document *integral to or explicitly relied* upon in the complaint . . . without converting the motion to dismiss into one for summary judgment" (emphasis in original) (citation omitted)).

Carrington raised these complaints with Pretium, and Pretium "recognized that the problem arose out of a plant in California, and thus produced replacement products out of a different plan[t] in Salt Lake City, Utah." *Id.* ¶¶ 14-15.  Plaintiff alleges that Pretium then "sent sample packaging for analysis by a lab, which determined that 'it is likely that limonene is responsible for the reported odor issues.'" *Id.* ¶ 16.  Plaintiff decided to "withdraw or recall the Product from the marketplace to avoid potentially harming customers, thus losing additional sales and further harming its brand." *Id.* ¶ 20.

Plaintiff points to paragraph 12 of the Purchase Order Terms and Conditions, which states as follows:

> Supplier [*i.e.*, Pretium] shall indemnify, defend and hold harmless Buyer, its affiliates, and their respective owners, managers, officers, directors, employees, representatives, consultants, and agents and their respective successors and assigns (the "Buyer Indemnified Parties") from and against any claims, fines, losses, actions, damages, expenses, legal fees and all other liabilities brought against or incurred by the Buyer Indemnified Parties or any of them arising out of: (a) death, bodily injury, or loss or damage to real or tangible personal property resulting from the use of or any actual or alleged defect in the Goods or Services, or from the failure of the Goods or Services to comply with the warranties hereunder; (b) any claim that the Goods or Services infringe or violate the intellectual property rights or other rights of any person; (c) any intentional, reckless, wrongful or negligent act or omission of Supplier or any of its affiliates, employees or subcontractors; (d) Supplier's breach of any of its covenants, representatives, warranties or obligations under the Terms; or (e) any liens or encumbrances relating to any Goods or Services.

*Id.* ¶ 21 (alteration in original); D.E. 5-3.  Plaintiff alleges that "[a]t a minimum, Pretium's conduct implicates" paragraphs 12(a), (c) and (d).  Compl. ¶ 22.

Paragraph 13 of the Purchase Order Terms and Conditions provides as follows:

> a. If Buyer [*i.e.*, Carrington] is required, or it otherwise determines it is appropriate, to withdraw or recall any or all of Buyer's products, or if there is any governmental seizure of its products for any reason

3

> whatsoever (a "Recall"), Supplier hereby covenants and agrees that it will fully cooperate with and use diligent efforts to assist Buyer in investigating any such situation. . . .
>
> b. Supplier [*i.e.*, Pretium] shall bear the full cost and expense (including fines and damages and costs to Buyer and to third parties) and shall indemnify and hold Buyer harmless of and from any such seizure, Recall or withdrawal, which occurs, due to (a) a failure of the Goods to conform to the Specifications or any warranty, covenant or representation made by Supplier in this purchase order and the Terms, (b) the failure by Supplier to comply with any applicable laws, or any court order or decree, or (c) the negligent, reckless or intentional act or omission of Supplier in connection with the supply of the Goods hereunder.

*Id.* ¶ 23 (alteration in original); D.E. 5-3. Carrington alleges that this provision requires Pretium "to 'bear the full cost and expense' and to 'indemnify and hold Buyer [*i.e.*, Carrington] harmless' for its damages." Compl. ¶ 25. Plaintiff continues that Pretium has refused to indemnify Carrington and hold it harmless. *Id.* ¶ 26.

Plaintiff brings three claims: breach of contract (First Claim for Relief), breach of the implied warranty of fitness for a particular purpose under N.J.SA. § 12A:2-315 (Second Claim for Relief), and breach of the implied warranty of merchantability under N.J.S.A. § 12A:2-314 (Third Claim for Relief). The case was removed to this Court by Defendant and the present motion followed. D.E. 2.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual allegations to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id*. Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true" and give a plaintiff the benefit of all reasonable inferences therefrom. *Fowler*, 578 F.3d at 210.

## III. ANALYSIS

### A. Breach of Contract

Defendant asserts that the breach of contract claim is deficient because Carrington has not alleged "that there existed a valid contract" and has "failed to cite the specific provision(s) that was/were allegedly breached and, correspondingly, failed to identify any specific conduct by Pretium that allegedly breached such provision(s)." Br. at 15-16. To state a claim for breach of contract under New Jersey law,[4] a party must allege (1) the existence of a valid contract; (2) breach of the contract; (3) damages as a result of the breach; and (4) that the complaining party performed its own duties under the contract. *Pollack v. Quick Quality Rests., Inc.*, 452 N.J. Super. 174, 188 (App. Div. 2017) (citing *Globe Motor Co. v. Igdalev*, 225 N.J. 469, 482 (2016)). A valid contract requires "1) a meeting of the minds; 2) offer and acceptance; 3) valid consideration; and 4) reasonably certain contract terms." *Grossman v. Parking Auth. of Camden*, No. 12-3097, 2013

---

[4] Both parties rely on New Jersey law in their submissions and Carrington's Purchase Order Terms and Conditions state that they are "governed by the laws of the State of New Jersey." D.E. 5-3 at 3 ¶ 19. Thus, the Court also relies on New Jersey law in assessing Plaintiff's claims for the purpose of deciding this motion.

5

WL 1144830, at *3 (D.N.J. Mar. 18, 2013) (citation omitted). "A plaintiff must identify the specific contract or provision that was allegedly breached." *Barker v. Our Lady of Mount Carmel Sch.*, No. 12-4308, 2016 WL 4571388, at *15 (D.N.J. Sept. 1, 2016) (citing *Skypala v. Mtg. Elec. Registration Sys., Inc.*, 655 F. Supp. 2d 451, 459 (D.N.J. 2009)).

As to the existence of a contract, the Complaint alleges that Pretium sold packaging to Carrington and that "[u]pon accepting and fulfilling Carrington's purchase order, Carrington's Purchase Order Terms and Conditions became an enforceable agreement between Carrington and Pretium." Compl. ¶¶ 1-2, 28. The Purchase Order specifies the exact containers, number of units, and price per unit. *See* D.E. 5-3 at 2. Additionally, the Purchase Order Terms and Conditions state that the supplier "shall be deemed to have agreed to be bound by the [Purchase Order Terms and Conditions] by accepting the Purchase Order, delivering the Goods, and/or performing the Services[.]" *Id.* at 3; *see also* N.J.S.A. § 12A:2-204 ("A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract."). Plaintiff alleges that Pretium performed (thereby agreeing to the Purchase Order Terms and Conditions) by fulfilling the Purchase Order, and that such performance created a valid contract. Compl. ¶ 28. Plaintiff has plausibly alleged that the Purchase Order and the incorporated Purchase Order Terms and Conditions were a valid contract with a meeting of the minds, offer and acceptance, consideration, and reasonably certain terms. *See Grossman*, 2013 WL 1144830, at *3.

As to the specific provisions of the contract that were allegedly breached, the Complaint quotes specific sections of the Purchase Order Terms and Conditions which Plaintiff alleges were breached—namely, paragraphs 12 and 13. Compl. ¶¶ 21-25. Again, this is a plausible allegation. Moreover, Plaintiff specifically identified Pretium's provision of contaminated containers, *id.* ¶

18, and refusal "to indemnify and hold Carrington harmless" as required by the Purchase Order Terms and Conditions, *id.* ¶¶ 25-26, as the conduct which allegedly breached the contract. Thus, Defendant's argument that Plaintiff "failed to identify any specific conduct by Pretium that allegedly breached" the contract falls short. Br. at 16. Defendant's motion to dismiss Plaintiff's breach of contract claim is denied.

### B. Breach of Implied Warranty of Fitness for a Particular Purpose – N.J.S.A. § 12A:2-315

Defendant also seeks dismissal of Plaintiff's claim for breach of the warranty of fitness for a particular purpose. Br. at 20-23. New Jersey law provides as follows:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

N.J.S.A. § 12A:2-315. To state a claim, a plaintiff must allege that "(1) the seller had reason to know the buyer's particular purpose; (2) the seller had reason to know that the buyer was relying on the seller's skill or judgment to furnish appropriate goods; and (3) the buyer must actually rely upon the seller's skill or judgment." *Pappalardo v. Combat Sports, Inc.*, No. 11-1320, 2011 WL 6756949, at *10 (D.N.J. Dec. 23, 2011) (citing *Gumbs v. Int'l Harvester, Inc.*, 718 F.2d 88, 92 (3d Cir. 1983)). "A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business[.]" N.J.S.A. § 12A:2-315 cmt. 2. Plaintiff must further allege that the item was defective. *Crozier v. Johnson & Johnson Consumer Cos., Inc.*, 901 F. Supp. 2d 494, 509 (D.N.J. 2012) (quoting *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992)).

Defendant argues that Carrington has not alleged "that Pretium was aware of any particular purpose, rather just of an ordinary purpose." Br. at 19. The Court agrees. The Complaint alleges

that "Pretium was aware that it was providing packaging for a food product." Compl. ¶ 5; *see also id.* ¶ 33 ("At the time of contracting, Pretium was aware of the purpose for which the packaging was being used.").[5] But this use is consistent with what Plaintiff alleges is the ordinary purpose of the containers—*i.e.*, to package food. "It is axiomatic that a product's ordinary purpose cannot be the same as its particular purpose; without that distinction, there can be no claim for breach of implied warranty of fitness for a particular purpose." *Franulovic v. Coca-Cola Co.*, No. 07-539, 2007 WL 3166953, at *6 (D.N.J. Oct. 25, 2007) (citing *Lithuanian Com. Corp. v. Sara Lee Hosiery*, 219 F. Supp. 2d 600, 615 (D.N.J. 2002)) (dismissing plaintiff's breach of implied warranty of fitness for a particular purpose claim because plaintiff did not "allege[] a particular purpose of [the product] that differ[ed] from its alleged ordinary purpose" which was a "fundamental flaw in [plaintiff's] claim"). Thus, because Plaintiff has not alleged a distinct particular use for which the packaging was intended and of which Pretium had reason to know, the Second Claim for relief is dismissed.

### C. Breach of Implied Warranty of Merchantability – N.J.S.A. § 12A:2-314

Finally, Defendant seeks dismissal of Plaintiff's claim for breach of the implied warranty of merchantability because "Plaintiff does not allege that the packaging failed in any of [its] ordinary functions." Br. at 23. New Jersey law provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods

---

[5] Plaintiff's Opposition contends that these allegations show a particular purpose of which Pretium was aware—*i.e.*, the packaging being intended for Simply Tera's Whey Protein as opposed to food products in general. Opp. at 10-11. While the Complaint refers to Simply Tera's Whey Protein, it does not allege that Pretium was aware of the particular product that would be packaged in its containers. *See* Compl. ¶ 5 ("Pretium was aware that it was providing packaging *for a food product*." (emphasis added)). The Purchase Orders and Purchase Order Terms and Conditions also do not make this clear. *See* D.E. 5-3.

of that kind." N.J.S.A. § 12A:2-314(1). For goods to be "merchantable," the statute requires that they

> (a) pass without objection in the trade under the contract description; and
>
> (b) in the case of fungible goods, are of fair average quality within the description; and
>
> (c) are fit for the ordinary purposes for which such goods are used; and
>
> (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
>
> (e) are adequately contained, packaged, and labeled as the agreement may require; and
>
> (f) conform to the promises or affirmations of fact made on the container or label if any.

N.J.S.A. § 12A:2-314(2). To state a claim, a plaintiff must allege the following:

> (1) that a merchant sold goods, (2) which were not 'merchantable' at the time of sale, (3) injury and damages to the plaintiff or its property, (4) which were . . . caused proximately and in fact by the defective nature of the goods, and (5) notice to the seller of injury.

*Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 600 n.8 (3d Cir 2012) (citation omitted).

Defendant claims, without authority, that "[t]he ordinary functions of packaging for food products are for protection, containment, information, utility of use and promotion." Br. at 23. Defendant concludes that because "Plaintiff does not allege that the packaging failed in any of these ordinary functions," and that Plaintiff does not allege "that the packaging failed to provide a minimum level of quality," the breach of implied warranty of merchantability claim must fail. *Id.* The Court disagrees.

Plaintiff alleges that the containers contaminated their product with limonene, which "created an odor and otherwise impacted the flavoring such that it rendered the Product

9

unmarketable." Compl. ¶ 7. Plaintiff supports this position with numerous customer complaints, which state that the product "smelled and tasted like plastic," "strongly smells like chemicals and tastes like chemicals," and that they "can't eat it anymore." *Id.* ¶ 11. Thus, the Complaint clearly alleges that the packaging failed in serving its ordinary purpose of properly containing food products and rendered the whey protein inedible or, at best, in the words of one customer, "horrible." *Id.* Defendant's motion to dismiss the breach of implied warranty of merchantability claim is denied.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss, D.E. 2, is granted in part and denied in part. Plaintiff's Second Claim for Relief is dismissed without prejudice. Plaintiff shall have thirty (30) days to file an amended complaint that cures the deficiencies noted herein. If Plaintiff does not file an amended complaint within that time, the Second Claim for Relief will be dismissed with prejudice. Defendant's motion is otherwise denied. An appropriate Order accompanies this Opinion.

Dated: February 23, 2023

                                                       John Michael Vazquez, U.S.D.J.